UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD GREYEAGLE, Plaintiff, v. FRANK BISIGNANO, Commissioner of Social Security, Defendant. | Case No. 2:25-cv-2839-JDP (SS) ORDER |

Plaintiff challenges the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. The parties move for summary judgment. ECF Nos. 8 & 12. They agree that remand is proper; however, while the Commissioner argues that the proper remedy is further proceedings, plaintiff asserts that he is entitled to an award of benefits. For the reasons discussed below, the court grants plaintiff's motion, denies the Commissioner's motion, and remands for an immediate award of benefits.[1]

[1] The parties have consented to magistrate judge jurisdiction. ECF No. 6.

**Standard of Review**

An Administrative Law Judge's ("ALJ") decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct legal standards have been applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation omitted).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process, the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

On January 7, 2013, plaintiff filed applications for a period of disability and DIB, alleging disability beginning December 28, 2012. Administrative Record ("AR") 154. In January 2015,

after his applications were denied both initially and upon reconsideration, the ALJ denied plaintiff's disability claim. AR 19-28. After the Appeals Council denied review, plaintiff sought judicial review in this District, and the court remanded the case for further proceedings. AR 657-73.

On October 11, 2016, while plaintiff's judicial case was pending, he again filed applications for a period of disability and DIB, alleging disability beginning July 27, 2016. AR 1060. Those applications were denied both initially and upon reconsideration. AR 777-89. After the court remanded plaintiff's initial case, the agency consolidated his applications and provided plaintiff a hearing before a different ALJ. AR 683. In February 2019, the ALJ denied plaintiff's consolidated disability claim. AR 683-94. In February 2020, the Appeals Council vacated the ALJ's order and remanded the case for further proceedings. AR 703-09.

Plaintiff was provided a third hearing before the same ALJ who conducted the second hearing, and in September 2022, the ALJ again denied plaintiff's disability claim. AR 2951-67. After the Appeals Council denied review, plaintiff again sought judicial review in this District, whereafter the parties stipulated to remand for further proceedings. AR 2985-91.

Upon remand, plaintiff received a fourth hearing before a different ALJ, and in June 2025, the ALJ denied plaintiff's disability claim. AR 2892-2908. Specifically, the ALJ found:

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2016.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 28, 2012, through his date last insured of September 30, 2016.
>
> * * *
>
> 3. Through the date last insured, the claimant had the following severe impairments: cervical spine disorder, lumbar spine disorder, bilateral knee disorders, bilateral carpal tunnel syndrome, and obesity.
>
> * * *
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

* * *

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of light work as defined in 20 CFR 404.1567(b), except as follows. The claimant needs a position change opportunity as often as every 30 minutes for 1-2 minutes. The claimant was limited to 4 hours of standing/walking, the rest sitting for 4 hours, in an 8- hour workday. The claimant was precluded from all ladders, ropes, and scaffolds climbing, and all dangerous work hazards exposure, and the claimant is limited to the remaining postural motions occasionally. The claimant is limited to frequent, but not constant, bilateral upper extremity handling, fingering, and feeling tasks. The claimant is limited to work not requiring a production quota pace (i.e. assembly line environment where one's work impacts work down the line), and work allow the claimant to be off task up to 3% of the workday due to momentary symptom distractions.

* * *

6. Through the date last insured, the claimant was unable to perform any past relevant work.

* * *

7. The claimant was born [in] 1967, and was 49 years old, which is defined as a younger individual age 18-49, on the date last insured.

8. The claimant has at least a high school education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

* * *

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 28, 2012, the alleged onset date, through September 30, 2016, the date last insured.

AR 2895-2908 (citations to the code of regulations omitted).

Plaintiff requested review by the Appeals Council, which denied the request. AR 2882-85. He now seeks judicial review under 42 U.S.C. § 405(g).

**Analysis**

Plaintiff claims that the ALJ erred in three ways. First, he argues that the ALJ "inappropriately discounted Plaintiff's documented need for a cane." ECF No. 8 at 13-16. Second, plaintiff asserts that the ALJ failed to properly evaluate the medical opinions of state agency medical consultants, Dr. Plimpton, and the medical providers who assessed plaintiff's mental limitations. *Id*. at 16-24. Third, plaintiff contends that the ALJ failed to provide clear and convincing reasons for discounting his symptom testimony. *Id*. at 24-28.

In response, the Commissioner states that "[a]fter reviewing this case, the Commissioner believes that remand pursuant to sentence four of 42 U.S.C. § 405(g) is appropriate." ECF No. 12 at 2. The Commissioner then argues that the appropriate remedy is to remand for further proceedings (i.e., a fifth hearing). *Id*. at 2-6. In his reply, plaintiff asserts that the proper remedy is to remand for an immediate award of benefits. ECF No. 13 at 2-5. The court analyzes the ALJ's alleged errors before determining the appropriate remedy.

**A. The ALJ's Errors**

**1. The Cane**

The ALJ failed to consider plaintiff's documented medical need for a cane. The ALJ stated that plaintiff "reported using a cane and wheelchair in 2016, although there does not appear to be any prescription for these devices in the medical evidence of the record." AR 2901. That was error. The record shows that Dr. Plimpton prescribed a cane in July 2014. AR 360. Plaintiff's medical records thereafter show the frequent use of a cane or wheelchair at medical appointments. *See* AR 419, 1239, 1346, 1365.

As plaintiff notes, courts in this Circuit have held that where there is a medical need to use a hand-held assistive device, the ALJ must account for that in determining functional limitations. *See* ECF No. 8 at 13 (collecting cases).[2] Accordingly, the ALJ erred by failing to consider plaintiff's medical need for a cane.

---

[2] The court has reviewed these authorities and agrees with plaintiff's interpretation.

Moreover, as plaintiff asserts, the ALJ's error is particularly troubling in light of the RFC finding from the ALJ's 2015 decision that plaintiff needed to use a cane, and the agency had determined that the 2015 RFC was binding on the agency under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).[3] AR 22, 632. Nonetheless, the ALJ here found that the prior finding "that the claimant was limited to a reduced range of sedentary [work] is not consistent with new material evidence and the current evidence of the record as a whole[.]" AR 2903. However, as plaintiff observes, the majority of the evidence cited by the ALJ for this proposition was not new but, in fact, had been in the record at the time of the 2015 decision. *See* ECF No. 8 at 15 (citing AR 291, 314, 318, 384, 1244, 2648). What is more, the ALJ did not explain why the new evidence supported changing the RFC finding from 2015. For example, the ALJ cited a medical record from April 2016. *See* AR 2903 (citing 1244). However, that record is from when plaintiff presented to the emergency room with a laceration on his hand. *See* AR 1242-43. It appears that the ALJ relied upon the record's characterization of plaintiff's walk as "unremarkable," but the record does not add further detail, including whether plaintiff's walking ability was even assessed. *See* AR 1244. Rather, the record focuses on treating plaintiff's hand—the reason that he presented to the emergency room. *See id*. As such, the ALJ improperly downgraded plaintiff's RFC to omit his medical need for a cane.

**2. Medical Opinions**

The ALJ erred in evaluating certain medical opinions. Under federal regulations, if a medical opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, [it is given] controlling weight." 20 C.F.R. § 404.1527(c)(2).[4] In other words, "[t]o reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If

---

[3] In *Chavez*, the Court of Appeals held that certain prior findings concerning an individual's functional capacity "are entitled to some res judicata consideration in subsequent proceedings." *Chavez*, 844 F.2d at 694.

[4] This regulation applies to claims filed before March 27, 2017. As noted, plaintiff initiated his claim on January 4, 2013. AR 154.

a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id*.

Here, the ALJ did not mention the 2013 assessments provided by state agency medical consultants Dr. Tambellini and Dr. Blando; instead, the ALJ only addressed the later-provided assessments by Dr. DeSouza and Dr. Amon. *See* AR 2903. The ALJ provided no reason for ignoring the medical opinions of Dr. Tambellini and Dr. Blando, and therefore she erred in failing to address them. Moreover, the ALJ failed to provide clear and convincing reasons to discount the opinions of Dr. DeSouza and Dr. Amon, both of which were more restrictive than the RFC.[5] *See* AR 623-24, 648-49. The ALJ held that the "findings that the claimant is limited to sedentary work are given little weight" because such a level of functioning "is not consistent with the current evidence of record[.]" AR 2903. To support this finding, the ALJ cited the same records as listed above regarding plaintiff's need for a cane. *See id*. As noted, the majority of the cited assessments were in the record at the time of the 2015 decision.

Moreover, the ALJ does not explain how those records constitute clear and convincing reasons for discounting Dr. DeSouza's and Dr. Amon's assessments. The ALJ found that the cited records supported the finding that plaintiff "has presented with stable knee ligaments, a full or normal range of motion and no swelling in his knees, a normal range of motion in his hips and shoulders, a normal or unremarkable gait and station, normal sensation, full strength, and no decreased range of motion in his neck, spine, and extremities." AR 2903. The six cited records are as follows: (1) when plaintiff presented in December 2012 "with severe pain in both knees and inability to stand, walk or climb for any time," the medical provider found that "[t]he ligaments are stable," AR 291; (2) when plaintiff presented in April 2013 with "back pain and knee pain," the medical provider found that his knees had a full range of motion and no swelling, AR 313-14; (3) that same month, plaintiff sought treatment for his knees, and the physical exam revealed that

---

[5] For example, both doctors opined that plaintiff was limited to carrying ten pounds and standing/walking for a total of two hours. *See* AR 623, 648. Nonetheless, the ALJ provided no lifting limitations and found that plaintiff could stand/walk up to four hours. *See* AR 2899.

his knees were "normal . . . except for [he had] tenderness," AR 318; (4) when plaintiff presented in August 2014 with joint pain, the medical provider noted no effusion and "range of motion is normal," AR 384; (5) as noted, plaintiff presented to the emergency room with a hand laceration in April 2016, and the treating provider reported that his walk was "unremarkable," AR 1244; and (6) in May 2013, when plaintiff appeared for a routine examination to receive a "tb test [and] immunizations" and to discuss with the medical provider his cerumen (earwax), erectile dysfunction, and long-term use of pain medications, the provider noted that plaintiff's gait was normal. AR 2647-48.

The ALJ failed to explain how these findings were inconsistent with Dr. DeSouza's and Dr. Amon's assessments that plaintiff was limited to sedentary work. Plaintiff argues that the record shows that he has "advanced arthritis in the knees, disc disease in the lumbar and cervical spine with stenosis, and problematic examination findings including a reduced range of motion, impaired gait, synovitis in the knees, crepitus, tenderness, and other abnormal findings and observations." *See* ECF No. 8 at 18 (citing AR 286, 291, 299, 325, 337, 373, 384, 411-12, 1236, 1273-74, 1284, 1292, 1296). The court has reviewed the record and agrees. *See* AR 286 (diagnosing plaintiff with tricompartmental osteoarthritis in his left knee), AR 291 (diagnosing plaintiff with "[s]evere degenerative joint disease" in both knees)[6], AR 299 (observing that plaintiff had "[b]ilateral crepitus" (crackling or crunching sound or sensation) in his knees and diagnosing him with osteoarthritis), AR 337 (diagnosing plaintiff with "[d]egenerative joint disease" in both knees), AR 373 (noting pain in knees with motion), AR 384-85 (diagnosing plaintiff with osteoarthritis in both knees and lumbar disc disease in his back), AR 412 (noting pain in knees with motion and diagnosing plaintiff with bilateral knee arthritis), 1274 (noting a "waddling gait, with stiff back and knee" and diagnosing plaintiff with "[m]ultilevel degenerative disc disease and facet arthrosis"), AR 1284 (noting pain in knees and back with motion), AR 1292-93 (noting pain in knees with motion and diagnosing plaintiff with "[m]ultilevel degenerative disc

---

[6] It bears mention that the ALJ relied on this assessment for the finding that plaintiff's knee ligaments were stable, but she failed to account for the medical provider's diagnosis. *See* AR 2903.

disease and facet arthrosis," a type of arthritis in the spine). "Accordingly, the ALJ's selective citation of normal clinical findings in light of substantial evidence to the contrary is unavailing as a legally sufficient reason to discount a treating physician's opinion." *See Kovach v. Berryhill*, No. 18-cv-1848-GPC-BLM, 2019 WL 4745036, at *9 (S.D. Cal. Sept. 30, 2019).

Furthermore, the ALJ erred in discounting Dr. Plimpton's opinion. Dr. Plimpton opined in February 2015 that plaintiff could sit for at least 4.6 hours but was unable to stand, walk, squat, or climb during the workday. AR 438. Dr. Plimpton determined that plaintiff could not work full-time (23 hours or more per week) because of severe pain in his knees. *Id.* The ALJ gave partial weight to Dr. Plimpton's opinion. AR 2903. Specifically, the ALJ found persuasive Dr. Plimpton's assessment that plaintiff could sit for at least 4.6 hours per day. *See id.* However, as plaintiff notes, the ALJ failed to "acknowledge Dr. Plimpton's findings that Plaintiff could not stand or walk to any extent, and could not squat or climb, all of which were more restrictive than the RFC limitations." *See* ECF No. 8 at 19. While the ALJ "need not discuss *all* evidence presented to her[,] . . . she must explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (internal citation and quotation marks omitted; emphasis in original). Accordingly, the ALJ erred by failing to account for Dr. Plimpton's opinion that plaintiff is unable to stand or walk during the workday.

Moreover, regarding Dr. Plimpton's opinion that plaintiff could not work full-time, the ALJ stated that this opinion is inconsistent with plaintiff's "recent work activity at substantial gainful activity levels in a position classified as light under the DOT doing what was likely medium equipment services[.]" AR 2903. As the ALJ noted, plaintiff worked for the Department of the Interior in the fourth quarter of 2024 in a position that "involved him meeting contractors at various job sites." AR 2902. Plaintiff testified that he was terminated as a probationary employee, but when the ALJ asked if plaintiff would have remained in the position, plaintiff testified that he would not have remained because the position "required a lot of walking, which killed me. I had to do less and less every day. I was at the end of my rope anyway." AR 2933-34. The ALJ found that Dr. Plimpton's opinion about plaintiff's ability to perform full-time work was inconsistent

with plaintiff's work for the Department of Interior "where the claimant was not terminated for any employment issues." AR 2903.

However, as plaintiff argues, "a claimant's functioning may vary over the course of a claim spanning several years, and it is error for the ALJ to rely upon evidence of the claimant's functioning during a latter period to reject greater work restrictions and possibly a closed period of disability during an earlier part of the claim." *See* ECF No. 8 at 20. The Court of Appeals has found that a claimant can be found disabled for a portion of time claimed, and the ALJ errs in rejecting a claim for the entire period without providing rationale for why later evidence applies to the entire time period. *Smith v. Kijakazi*, 14 F.4th 1108, 1113-14 (9th Cir. 2021) ("The record evidence reflects that, over time, [the claimant] moved from a state where he appears to have been unable to engage in meaningful work to a state in which he was significantly less hindered. Therefore, it may be that [the claimant] was disabled for a qualifying portion of the time from his alleged onset date, even if not for the full period."). The ALJ failed to explain how plaintiff's work activity in 2024 had any bearing on plaintiff's functional capacity prior to the expiration of his insured status in 2016.

Lastly, the ALJ erred in evaluating the mental health assessments of plaintiff. In 2016, Dr. Stiles reported that, with regard to plaintiff's "ability to interact with coworkers and with the public, the claimant reported he is moderately limited due to memory loss that impairs his social communicating as he cannot remember people or past conversations." AR 1350. Dr. Stiles also opined that plaintiff is "significantly limited" in his "ability to deal with the usual stresses encountered in a competitive work environment" given his "memory impairments that leave him confused." *Id*. In 2017, Dr. Regan and Dr. Mateus independently determined that plaintiff "needs a routine, low-stress environment" for work. AR 626, 651. Also in 2017, Dr. Miller found that plaintiff had mild to moderate limitations in performing "one or two-step simple repetitive tasks," performing "basic work activities and [being] safety conscious on a consistent basis without special or additional instructions," maintaining regular attendance in the workplace, handling "normal work related stress from a competitive work environment," and completing "a normal

workday or workweek and staying consistent with adequate pace and productivity without interruptions from a psychiatric condition." AR 1368.

The ALJ gave these assessments little weight because plaintiff elsewhere "was described as pleasant and cooperative, had largely normal results on standardized intelligence testing, and was assessed with intact cognition, normal behavior, normal memory, a logical through process, and good, appropriate, or normal insight, judgment, and impulse control." AR 2904. To support this conclusion, the ALJ cited the following six records: (1) for his academic classes, plaintiff was found to have normal results on standardized intelligence testing, though the assessment determined that he had learning disabilities that required accommodation, AR 185, 193; (2) plaintiff was found to have average or above average memory, AR 307; (3) at a medical appointment, plaintiff was found to exhibit "appropriate insight and judgment, exhibit[] appropriate mood, and [be] alert and oriented," AR 1227; (4) when plaintiff presented to the emergency room with a hand laceration, the medical provider noted normal judgment, insight, and affect, AR 1244; (5) when plaintiff presented with memory problems, a provider administered a cognitive screen that revealed "no indications of any impairment," though the provider noted that plaintiff's account appeared "quite honest, credible and troubling. It is very possible that he is having a type of memory-related problem that this screen does not pick up," AR 1262; and (6) when plaintiff presented for a routine appointment, the medical provider noted that his memory and judgment were normal, AR 2648.[7]

As an initial matter, the court agrees with plaintiff that some of these findings have no indication of a "full mental health status examination" being performed by "a qualified mental health professional." *See* ECF No. 8 at 22. Specifically, the first, third, fourth, and sixth citations do not appear to contain any records of a mental health screening by a qualified professional; rather, they relate to plaintiff's learning disabilities or encounters with other medical professionals, including at routine appointments. *See* AR 193, 1227, 1244, 2648. Moreover, as noted, the fifth

[7] The ALJ cited a seventh record located at "7F-57." AR 2904. As plaintiff notes, this record does not appear to exist, as Exhibit 7F is comprised of only five pages, none of which appear to be related to the ALJ's finding. *See* ECF No. 8 at 22; AR 323-27.

citation reveals the medical provider's opinion that plaintiff's reported memory loss appeared "quite honest, credible and troubling. It is very possible that he is having a type of memory-related problem that this screen does not pick up." AR 1262. That leaves only the second citation, wherein a clinical psychologist characterized plaintiff's scores on memory assessments as average or above average. AR 307.

Still, the ALJ failed to explain how this assessment was inconsistent with the findings by Dr. Stiles, Dr. Regan, Dr. Mateus, and Dr. Miller that plaintiff had a medical need for a low-stress environment.[8] Accordingly, the ALJ erred by not adequately explaining why "significant probative evidence has been rejected." *See Vincent on Behalf of Vincent*, 739 F.2d at 1395.

**3. Plaintiff's Testimony**

Lastly, the ALJ erred by failing to provide specific, clear, and convincing reasons for rejecting plaintiff's symptom testimony. In the Ninth Circuit, courts follow a "two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). If the claimant meets this requirement, and there is no evidence of malingering, the ALJ can reject his symptom testimony only by offering specific, clear, and convincing reasons for doing so. *Id.* "This is not an easy requirement to meet: the clear and convincing standard is the most demanding required in Social Security cases." *Id.*

---

[8] The ALJ also noted that Dr. Stiles and Dr. Miller issued their opinions after plaintiff's date last insured. AR 2905. The Court of Appeals "has specifically held that 'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'" *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)). As plaintiff asserts, "in light of Plaintiff's allegations of long-standing and gradually progressing memory problems, Dr. Stiles' and Dr. Miller's opinions, which were both dated only a matter of months after the date last insured, were certainly relevant to the analysis of Plaintiff's mental symptoms and limitations." *See* ECF No. 8 at 23.

The ALJ's reasons must also be supported by substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ noted that, over the prior three hearings, plaintiff's testimony can be summarized as follows:

> He reported constant pain in his neck, back, knees, and ankles. This prevented him from being on his feet for any sustained period of time, being able to do so for only approximately two minutes at a time. He experienced pain with any significant movement and required an assistance device for ambulation. He also had used knee braces since bilateral surgeries in 2005. He experienced swelling in his lower extremities and had to elevate his legs daily every two hours for fifteen minutes at a time. The claimant also described weakness in his bilateral hands, causing him to drop things. He had difficulty sleeping and associated issues with fatigue. He had to lay down throughout the day due to pain. The claimant also described memory deficits and difficulty dealing with stress. The claimant's impairments allegedly affected his lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, stair climbing, memory, completing tasks, concentration, understanding, following instructions, using hands, and getting along with others. He estimated that he could only walk about 200 feet without having to stop and rest and pay attention for 20 to 30 minutes at a time.

AR 2900.

The ALJ acknowledged that the record documented plaintiff's "history of ongoing bilaterial knee pain," that plaintiff had "tricompartmental osteoarthritis," that plaintiff had "a history of radicular lower back pain" associated with "degenerative disc disease," and that plaintiff's "lumbar spine showed multilevel degenerative changes." AR 2900-01. The ALJ also noted that plaintiff "has presented with an antalgic gait, lower extremity and upper weakness, a reduced range of motion in his neck, pain with motion and limited range of motion in his back and a reduced range of motion, pain with motion, synovitis, crepitus, tenderness, and moderate varus in his knees." AR 2901. Nonetheless, the ALJ held that plaintiff's testimony was inconsistent with his "level and response to treatment, degree of findings on objective imaging, and physical examination findings during the relevant time period[.]" *Id*.

However, the ALJ failed to identify with specificity plaintiff's improved response to treatment, any particular imaging findings, or examination findings that were inconsistent with plaintiff's symptom testimony. The ALJ relied on above-discussed evidence, including that

plaintiff at times showed stable knee ligaments, full range of motion in his knees, and an unremarkable gait. *Id*. As an initial matter, this evidence is not substantial for the reasons identified above. Moreover, as plaintiff notes, "the ALJ failed to consider that symptoms fluctuate, and a claimant who is dealing with chronic pain may nevertheless present with varying examination findings during different visits with different providers." *See* ECF No. 8 at 26. Indeed, the Court of Appeals has held that "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). The ALJ did not explain why some unremarkable findings support discounting plaintiff's symptom testimony, particularly in light of the aforementioned evidence that cuts the other way.

Further, as plaintiff notes, "the ALJ's decision as a whole did not discuss Plaintiff's treatment for his conditions," and thus any conclusion about plaintiff's response to treatment is unfounded. *See* ECF No. 8 at 27. Similarly, the ALJ erred in discounting plaintiff's testimony because of his work activity in 2024. As previously discussed, plaintiff's work activity came approximately eight years after the date last insured, and the ALJ fails to show why that supports rejecting plaintiff's symptom testimony as to the time period before the date last insured. Moreover, the ALJ failed to account for plaintiff's testimony that he "would have had to [leave]" that job even if he was not terminated. *See* AR 2933. Plaintiff testified that he "was taking more and more time off" to work from home because he struggled with sitting in the office, and that at home and in the office, he would take breaks. AR 2935-37. It also bears mention that, when asked why he applied for a job, plaintiff testified he "had to give it a try financially" because he and his wife "are stretched so thin, it's not funny," presumably because plaintiff otherwise has not appeared to work since December 2012. AR 2937.

Accordingly, for all of these reasons, the ALJ failed to provide specific, clear, and convincing reasons for discounting plaintiff's symptom testimony.

Lastly, it bears repeating that the Commissioner has not responded to any of the issues set forth above, despite plaintiff briefing each in detail, including citations to the record. Instead, the Commissioner implicitly agrees that the ALJ committed harmful error. *See* ECF No. 12 at 2

("After reviewing this case, the Commissioner believes that remand pursuant to sentence four of 42 U.S.C. § 405(g) is appropriate."). "As several district courts within the Ninth Circuit have concluded, the Commissioner's failure to respond to [plaintiff's] arguments constitutes a waiver." *See Matthew Jacob C. v. Comm'r Soc. Sec. Admin.*, No. 23-cv-0906-AR, 2024 WL 4100551, at *4 (D. Or. Sept. 6, 2024) (collecting cases). The court finds that "the Commissioner's failure to substantively respond" to plaintiff's arguments "constitutes a concession of those issues." *See Johnny T. v. Berryhill*, No. 18-cv-0829-AA, 2019 WL 2866841, at *2 (D. Or. July 2, 2019). "Consequently, the court will not remand issues that the Commissioner has failed to respond to and thereby require plaintiff to re-litigate them." *See Matthew Jacob C.*, 2024 WL 4100551, at *4.

The court finds that remand is appropriate on the independent basis of each error discussed above. The Commissioner has waived any argument to the contrary. In turning to the appropriate remedy, the court considers the above-discussed errors conceded.

**B. The Remedy**

The only dispute between the parties is whether the court should remand for further proceedings or an immediate award of benefits.[9] The Court of Appeals has announced the "credit-as-true" rule, whereby "the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). The court addresses each factor in turn.

---

[9] As an initial matter, the Commissioner argues that plaintiff has waived this issue by not requesting an immediate award of benefits in his motion. ECF No. 12 at 5-6. However, plaintiff requested in his complaint that "this court find Plaintiff has been disabled at all times relevant to the application for disability insurance benefits." *See* ECF No. 1 at 4. Moreover, the Commissioner must have been put on notice of plaintiff's intended request, as the Commissioner addressed this issue on the merits. Accordingly, the court finds that the determination of the appropriate remedy is properly before it.

First, as established above, the ALJ failed to provide legally sufficient reasons for rejecting medical opinion evidence and plaintiff's symptom testimony. Where the ALJ fails "to provide legally sufficient reasons for rejecting" evidence, "[the court] credit[s] the evidence as true." *Id*. at 594.

Second, there are no outstanding issues that must be resolved. The Commissioner argues that there are three issues that meet this criterion. The first issue is that "[t]he record contains clinical findings that create a conflict requiring resolution. Despite evidence of abnormalities, Plaintiff also presented with stable knee ligaments, a full or normal range of motion and no swelling in his knees, a normal range of motion in his hips and shoulders, a normal or unremarkable gait and station, normal sensation, full strength, and no decreased range of motion in his neck, spine, and extremities." ECF No. 12 at 4. This language is identical to that used by the ALJ, which the court has already found to be in error. The records cited by the Commissioner are as follows: (1) when plaintiff presented "with severe pain in both knees and inability to stand, walk or climb for any time," the medical provider found that "[t]he ligaments are stable," AR 291; (2) when plaintiff presented with "back pain and knee pain," the medical provider found that his knees had a full range of motion and no swelling, AR 313-14; (3) when plaintiff presented with joint pain, the medical provider noted no effusion and "range of motion is normal," AR 384; (4) when plaintiff presented to the emergency room with a hand laceration, the treating provider noted that his walk was "unremarkable," AR 1244; and (5) when plaintiff appeared for a routine examination to receive a "tb test [and] immunizations" and to discuss with the medical provider his cerumen (earwax), erectile dysfunction, and long-term use of pain medications, the provider noted that plaintiff's gait was normal. AR 2647-48.

These records do not establish the presence of an outstanding issue. Regarding the first record, neither the ALJ nor the Commissioner explain why "stable" knee ligaments preclude a finding of disability. As for the fourth and fifth records, plaintiff had presented for different concerns and there is no information about the extent to which his walking ability or knees were assessed. That leaves two records, the second and the third, that establish plaintiff has presented with a normal range of motion in his knees on at least two occasions. However, as established

above, plaintiff has presented at other times with a reduced range of motion in his knees. *See* AR 373, 412, 1284, 1292-93. These records do not constitute an issue that "must be resolved before a determination of disability can be made." *See Benecke*, 379 F.3d at 593. Rather, they establish that plaintiff's "symptoms wax and wane in the course of treatment." *See Garrison*, 759 F.3d at 1017.

The second issue is that plaintiff "worked at substantial gainful activity levels after the date last insured in the fourth quarter of 2024." ECF No. 12 at 4. The court recognizes that plaintiff's work activity is a change of course that the agency may account for in determining benefits owed in 2024. However, the Commissioner concedes that plaintiff's work activity comes much later than the date last insured. Accordingly, plaintiff's work activity does not present an outstanding issue for determining whether he was disabled for the time period in question (i.e. between the alleged onset date and the date last insured).[10]

The final issue is that "the record contains conflicting medical opinions." ECF No. 12 at 4. Specifically, the Commissioner notes that Dr. Tambellini and Dr. Blando "found that Plaintiff could perform a wide range of light work with no more than two hours of standing and walking," "Dr. Khasigian opined that Plaintiff could return to his prior work with reduced sitting and weight bearing," Dr. DeSouza and Dr. Amon "found that Plaintiff could perform a range of sedentary work," Dr. Kwock found that plaintiff could stand and walk up to four hours per workday, and other "psychological consultants" found that plaintiff could perform work without mental limitations. *Id.* Regarding the opinions speaking to plaintiff's physical capabilities, the Commissioner does not address that the ALJ erred in rejecting Dr. Plimpton's opinion that plaintiff cannot perform full-time work. *See* AR 438. The Commissioner does not explain how this issue would be resolved by appeal. Similarly, as for the opinions regarding plaintiff's mental

---

[10] The court will not further address the propriety of benefits after the date last insured because that issue is for the agency to address in the first instance. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) ("Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'").

limitations, the Commissioner does not explain why the presence of differing opinions constitutes an outstanding issue to be resolved. That doctors' opinions differ from one another is not a basis for remanding for further proceedings; indeed, if that were the standard, courts could never remand for an award of benefits. *See Norris v. Colvin*, 160 F. Supp. 3d 1251, 1283 (E.D. Wash. 2016) (remanding for an award of benefits where medical providers' opinions differed regarding the severity of a limitation). Rather, the Court of Appeals has stated that this inquiry is focused on "significant factual conflicts" between "testimony and objective medical evidence" and "crucial questions as to the extent of [the plaintiff's] impairment given inconsistencies between his testimony and the medical evidence in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-05 (9th Cir. 2014). Neither the Commissioner nor the ALJ identify such factual conflicts, and the court's review of the record reveals no such inconsistencies.

The Court of Appeals has elsewhere described this factor as determining whether "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. Plaintiff's applications date back nearly 14 years, the record is over 3,000 pages long, there have been many medical records submitted, ample medical professionals have offered their opinions, and an ALJ has conducted four separate hearings. The court finds that the record is fully developed and no "useful purpose" would be served by a fifth hearing. *See id*.

While remanding for further proceedings would allow the ALJ to "revisit the medical opinions and testimony that she rejected for legally insufficient reasons, [Court of Appeals] precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose[.]'" *Id.* at 1021. Instead, allowing the ALJ "to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *See Benecke*, 379 F.3d at 595; *see also Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility."). Courts in this Circuit "have regularly held that there is

no useful purpose in remanding for further proceedings when the Commissioner has had repeated opportunities and continues to make the same legal errors." *Jeffrey C. v. Kijakazi*, No. 3:22-cv-0079-SI, 2023 WL 4760603, at *6 (D. Or. July 26, 2023) (collecting cases). Moreover, the Court of Appeals has held that "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." *Benecke*, 379 F.3d at 595. Accordingly, the court finds that "there are no outstanding issues that must be resolved before a determination of disability can be made." *See id*. 593.

Third, the ALJ would be required to find plaintiff disabled if the rejected evidence and testimony were credited. *See Treichler*, 775 F.3d at 1106 (explaining that once a court has found that "there are no outstanding issues that must be resolved before a determination of disability can be made," the court has "discretion to credit a claimant's testimony [and evidence] as true and remand for benefits"). Plaintiff's medical records show the frequent use of a cane or wheelchair. *See* AR 419, 1239, 1346, 1365. Dr. Plimpton opined that plaintiff is unable to stand, walk, squat, or climb during the workday; consequently, he determined that plaintiff cannot maintain full-time employment. AR 438. It is undisputed that plaintiff has osteoarthritis and severe degenerative joint disease in both knees, multilevel degenerative disc disease in his back, and arthritis in his spine. *See* AR 286, 291, 337, 384-85, AR 412, 1292-93. Moreover, plaintiff has presented at times with bilateral crepitus (crackling or crunching sound or sensation) in his knees, a waddling gait, stiff knees, reduced motion in knees, and pain in knees during motion. AR 299, 373, 1274, 1284, 1292-93. Furthermore, Dr. Stiles, Dr. Regan, Dr. Mateus, and Dr. Miller each opined that plaintiff needed a low-stress work environment, in part due to memory impairments. *See* AR 626, 651, 1350, 1368.

As noted, plaintiff's testimony can be summarized as follows:

> He reported constant pain in his neck, back, knees, and ankles. This prevented him from being on his feet for any sustained period of time, being able to do so for only approximately two minutes at a time. He experienced pain with any significant movement and required an assistance device for ambulation. He also had used knee

> braces since bilateral surgeries in 2005. He experienced swelling in his lower extremities and had to elevate his legs daily every two hours for fifteen minutes at a time. The claimant also described weakness in his bilateral hands, causing him to drop things. He had difficulty sleeping and associated issues with fatigue. He had to lay down throughout the day due to pain. The claimant also described memory deficits and difficulty dealing with stress. The claimant's impairments allegedly affected his lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, stair climbing, memory, completing tasks, concentration, understanding, following instructions, using hands, and getting along with others. He estimated that he could only walk about 200 feet without having to stop and rest and pay attention for 20 to 30 minutes at a time.

AR 2900.

Crediting all rejected evidence and testimony as true, "it is clear from the record that the ALJ would be required to find [plaintiff] disabled" from the alleged onset date through the date last insured. *See Benecke*, 379 F.3d at 593.

Lastly, even though all three factors are satisfied, the court nonetheless "retain[s] 'flexibility' in determining the appropriate remedy." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1020). Specifically, the court may still "remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Id.* (quoting *Garrison*, 759 F.3d at 1021). The Commissioner argues that there is such "serious doubt" because of "evidence of unremarkable clinical findings and medical source statements that opine functional ability inconsistent with a disability." ECF No. 12 at 5. The court has sufficiently addressed these arguments above. The Commissioner also does not explain "how that evidence casts into serious doubt [plaintiff's] claim to be disabled," and the court has "independently reviewed the entire record and also ha[s] found nothing that would create doubt as to [plaintiff's] entitlement to the benefits []he seeks." *See Garrison*, 759 F.3d at 1022. Further, as the Court of Appeals held, "[r]emanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.'" *Id.* (quoting *Varney v. Sec'y of Health & Hum. Servs.*, 859 F.2d 1396, 1398 (9th Cir.

1988)). Consequently, the court declines to exercise its discretion to remand for further proceedings.

The court recognizes that an award of benefits is appropriate only in "rare circumstances." *Treichler*, 775 F.3d at 1100 (9th Cir. 2014). The court does not take this decision lightly. Such relief, however, is fitting here. Plaintiff's initial disability applications have been pending for nearly 14 years. Other than his brief work activity in 2024, there is no evidence that he has had gainful employment since December 28, 2012. On four occasions, plaintiff has appeared at a hearing before an ALJ, and each time the ALJ has denied his claim, only for the Appeals Council or this court to later find that the denial was in error. Between each appeal, plaintiff has been forced to wait years. Enough is enough.

Accordingly, because a fifth hearing would "create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication" from which plaintiff might never emerge with the benefits to which he is entitled, this case is remanded for an award of benefits. *See Benecke*, 379 F.3d at 595.

**Conclusion**

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 8, is GRANTED.
2. The Commissioner's motion for summary judgment, ECF No. 12, is DENIED.
3. This matter is remanded for an immediate calculation and award of benefits.
4. The Clerk of Court is directed to enter judgment in plaintiff's favor and close this case.

IT IS SO ORDERED.

Dated: September 24, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE